Case 4:15-cv-02448 Document 107 Filed in TXSD on 06/21/16 Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
June 21, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTOPHER CHAD AUBREY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-2448 |
| | § | |
| RICHARD WEIHERT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Kristopher Chad Aubrey filed a complaint under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. He filed an amended complaint on September 14, 2015. Aubrey's complaint and amended complaint named 15 defendants. On December 17, 2015, this Court granted a motion by three of the defendants, Richard Weihert, Sherry Terry, and Sandra Castillo, to sever the claims against them and transferred those claims to the Northern District of Texas.

On October 14, 2015, defendant James Jones filed a motion to dismiss the claims against him pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. On October 26, 2015, defendants Patrick Muldowney, Karen Faust, Gertlineth Perry, Mark Varner, Mary Beth Pipkin, Kelly Rogers, and Jamie Williams filed a motion to dismiss under Rule 12(c). Aubrey has responded to the motions. For the reasons stated below, defendants' motions are granted and plaintiff's claims are dismissed with prejudice.

**I.     Background**

Aubrey contends that he suffered an injury to his left leg during his arrest on February 13, 2014. Complaint at 11. He was brought to Parkland Trauma where his leg was examined. *Id.*

In May 2015, after his arrival in the Texas Department of Criminal Justice ("TDCJ"), Aubrey's leg was x-rayed. Aubrey alleges that Dr. Weihert told him that the x-ray showed an old fracture of the tibia. *Id.* He was assigned to a bottom bunk, given pain medication, and told to return to normal activity despite his complaints of pain and bruising. *Id.* at 11-12.

Aubrey was subsequently transferred to the TDCJ's Huntsville Unit. *Id.* at 12. Aubrey contends that he went to the Huntsville Unit infirmary, where defendant Nurse Mark Varner told him to get out of the infirmary and do what he was told to do. *Id.*

Aubrey alleges that he saw defendant Dr. Muldowney in a teleconference visit. Aubrey alleges that Dr. Muldowney told him that he had an extra bone in his leg, and "that's normal, people are born that way." *Id..* Aubrey alleges that, at that time, defendant Perry, a Correctional Clinical Associate, interrupted the conversation and started arguing with Aubrey about Dr. Muldowney's conclusions. *Id.* Aubrey alleges that defendant Kelly Rogers, a Dental Assistant, then started to examine Aubrey's leg and give her observations to Dr. Muldowney. *Id.* On June 17, 2015, new x-rays were taken and Aubrey was shown an image of a broken bone. *Id.* On June 29, 2015, Perry called Aubrey to her office to discuss the x-rays. *Id.*

Aubrey next filed grievances with defendant Jamie Williams, the Practice Manager at the Huntsville Unit. *Id.* at 13. Aubrey was scheduled for a follow up visit with defendant Dr. Karen Faust. Aubrey alleges that Dr. Faust told him that she could not see his x-rays on her computer screen because they were blurred, and could not print them because her printer was broken. *Id.* He alleges that Dr. Faust then told him that the other doctors were wrong about his leg, and that his symptoms indicated problems with his back. She prescribed medication. *Id.*

Aubrey alleges that he saw defendant Nurse Manager Mary Pipkin the next day and told her about his visits with medical personnel. Aubrey said that he intended to file a grievance, and

alleges that Pipkin told him: "Go ahead, that shit doesn't work." *Id.* at 14. Aubrey contends that he has still not received proper treatment for a fractured tibia, in violation of his Eighth Amendment rights. Aubrey further alleges that defendant James Jones, the Warden of the Huntsville Unit, exhibited deliberate indifference to Aubrey's serious medical needs by failing to ensure that Aubrey receive prompt and adequate medical attention. Aubrey seeks compensatory and punitive damages, and injunctive relief.

**II.     Analysis**

    **A.     Standard of Review**

In reviewing a motion to dismiss under rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). The standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 601 (1969). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009)(citation and internal quotation marks omitted).

    **B.     Personal Involvement**

Defendant Jones argues that Aubrey fails to demonstrate that he was personally involved in any of the alleged constitutional violations. To prevail on his claims, Aubrey must demonstrate that each defendant was personally involved in the alleged constitutional violations, or that the defendant committed wrongful acts that were causally connected to a constitutional deprivation. *See Jones v. Lowndes County, Mississippi*, 78 F.3d 344, 349 (5th Cir. 2012).

Moreover, supervisory officials cannot be held vicariously liable under 42 U.S.C. § 1983 for acts of their subordinates on a theory of *respondeat superior*. *Monell v. Dept't of Soc. Servs.*, 436 U.S. 658, 692 (1978).

Aubrey argues that Jones is liable because Aubrey's grievances put Jones on notice that Aubrey was receiving inadequate medical treatment. Jones, Aubrey argues, should have ensured that his subordinates rectified the situation, and properly treated Aubrey.

As Aubrey's own recitation of facts shows, however, he *did* receive medical treatment: Aubrey was seen by Huntsville Unit medical personnel several times, and had a teleconference with Dr. Muldowney. Moreover, his grievances were investigated by the Medical Grievance Program Office of Professional Standards TDCJ Health Services Division. That review shows that Aubrey received "ongoing medication for [his] knee pain," that x-rays showed no acute fracture or dislocation, and that Aubrey's reported pain and symptoms were not consistent with the x-ray results. Complaint at 18.

Aubrey's complaint against Jones is, in effect, that Jones did not countermand the treatment provided and prescribed by licensed medical personnel. Jones, however, is the Warden of the Huntsville Unit, not a medical professional. Jones was in no position to countermand the prescribed treatment, and Aubrey's complaint is, in reality, that Jones is liable for the alleged deliberate indifference of his subordinates. Under *Monell*, this fails to state a claim against Jones, and Jones is entitled to dismissal of all claims against him.

    **C.**     **Deliberate Indifference**

All of the moving defendants argue that Aubrey fails to plead that they exhibited deliberate indifference to his serious medical needs. To rise to the level of a constitutional violation, defendants' actions must exhibit deliberate indifference to the prisoner's serious

medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Deliberate indifference" is more than mere negligence, *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976), but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, deliberate indifference requires that the defendant be subjectively aware of a substantial risk of serious harm to the inmate and recklessly disregard that risk. *Id.* at 829, 836.

> Deliberate indifference is an extremely high standard to meet . . . [T]he plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Aubrey's complaint, including the many pages of documents incorporated into the complaint, demonstrate that Aubrey was examined by medical personnel on multiple occasions, was x-rayed, prescribed medication for his ailments, and given orders for a bottom bunk to accommodate his injury. The complaint further demonstrates that Aubrey's complaints were not consistent with the diagnostic results. *See*, *e.g.*, Complaint at 18. While Aubrey asserts that he was not treated correctly, mere disagreement with medical treatment does not state a claim for deliberate indifference. *See*, *e.g.*, *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3286, 292 (5th Cir. 1997).

Aubrey challenges the diagnoses by the doctors, alleges that Perry interfered with his treatment by arguing with him during his teleconference with Dr. Muldowney and exceeding her professional competence to review his x-rays, and alleges that Rogers exceeded her professional competence by examining his leg. He further alleges that defendant Varner, a nurse, failed to

treat him by ordering him out of the infirmary. Considering the multiple examinations, diagnoses, and various treatments prescribed, and taking all of Aubrey's allegations as true and viewing them in the light most favorable to his claims, Aubrey at most alleges negligence by these defendants. Mere negligence, however, does not rise to the level of a constitutional violation.

Aubrey's allegations regarding defendants Williams and Pipkin, at most, alleges supervisory liability. He does not contend that either of these defendants examined or treated him, or had an obligation to do so. Rather, he complains that their subordinates did not provide adequate treatment, and that Pipkin told him that he would not get the result he desired through the grievance process. As discussed above, however, supervisory officials cannot be held vicariously liable under 42 U.S.C. § 1983 for acts of their subordinates on a theory of *respondeat superior*. Monell, 436 U.S. at 692.

### D.   Eleventh Amendment Immunity

Aubrey's complaint states that he is suing the defendants in their individual and official capacities. He also names TDCJ, Texas Tech University Health Sciences Center, and University of Texas Medical Branch ("UTMB") as defendants.

The Eleventh Amendment bars suits for money damages by individuals against states, including state agencies and departments. It also bars suit for money damages against state officials in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). TDCJ, Texas Tech and UTMB are agencies of the State of Texas. Aubrey's claims for damages against TDCJ, Texas Tech, UTMB, and the individual defendants in their official capacities, are thus barred by the Eleventh Amendment.

### E. Defendant Gayle Dunegan

Aubrey's amended complaint named Vocational Nurse Gayle Dunegan as a defendant, but does not make any allegations of wrongdoing by Dunegan. Because Aubrey fails to allege any wrongful act or omission by Dunegan, he fails to state a claim against her. This Court will therefore exercise its authority under 28 U.S.C. § 1915A and *sua sponte* dismiss Dunegan from this case.

### F. Conclusion

For the foregoing reasons, the defendants' motions to dismiss are granted. Because Aubrey has failed to allege any wrongdoing by Gayle Dunegan, fails to demonstrate any grounds for injunctive relief and because, as discussed above, his damages claims against TDCJ, Texas Tech, and UTMB are barred by the Eleventh Amendment, this Court *sua sponte* dismisses Aubrey's claims against Dunegan, TDCJ, Texas Tech, and UTMB. *See* 28 U.S.C. § 1915A.

## III. Order

It is ORDERED that:

1. The defendants' motions to dismiss (Dkt. Nos. 56 and 75) are GRANTED;

2. The Court *sua sponte* dismisses the claims against defendants Gayle Dunegan, Texas Department of Criminal Justice, Texas Tech University Health Sciences Center, and University of Texas Medical Branch; and

3. The complaint (Dkt. No. 1) and amended complaint (Dkt. No. 26) are DISMISSED WITH PREJUDICE.

SIGNED on this 21st day of June, 2016.

_____
Kenneth M. Hoyt
United States District Judge